Bernard SILBER, Appellant

v.

UNITED STATES of America,
Appellee.

No. 15779.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 2, 1960.

Decided June 30, 1961.

Petition for Rehearing Denied
Aug. 1, 1961.

Mr. Victor Rabinowitz, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. William Hitz, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., at the time of argument, Carl W. Belcher, Asst. U. S. Atty., at the time of argument, and Miss Doris Spangenburg, Asst. U. S. Atty., were on the brief, for appellee.

Before Mr. Justice REED, retired,* BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This case is a companion to Grumman v. United States, 110 U.S.App.D.C. ——, 294 F.2d 708. Appellant, like Grumman, was called to testify before a subcommittee of the House Committee on Un-American Activities during a series of hearings on communist infiltration into the communications industry.

Appellant was called on August 2, 1957. At the commencement of proceedings on that day, and in the presence of appellant, the subcommittee chairman, Mr. Clyde Doyle, made the following statement:

"This morning's hearings are a continuation of previous hearings started on July 17, 1957, this being a continuation of a series of hearings in the communications industry in the United States, namely, the position and influence held by members of the Communist Party and organization dedicated to the Communist objectives in that field of communications industry, principally.

\*   \*   \*   \*   \*   \*

[Mr. Doyle then read into the record the resolution of the full commit-

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code.

tee authorizing the hearings currently in progress. The language of that resolution is quoted in Grumman.]

\* \* \* \* \* \*

"[In] these hearings, the second of a series on this general subject, the committee hopes to obtain additional information respecting the extent of the penetration and control exercised by members of the Communist Party in the United States over an industry which is vital at all times to our defense, namely, communications.

"In the event that testimony given during these hearings reflects a situation correctable by legislation or which may be remedied by legislation, the committee will recommend the appropriate measures at the proper time."

In response to questioning by a staff member of the committee, appellant testified that he had been a member of the Communist Party some years previously, and that in his work for Western Union Telegraph he handled Government coded messages. He refused to name the person who had recruited him into the Party and refused to state whether he knew any communists presently in the industry. The exact questions forming the basis of the indictment are as follows:

Count One: "Was he [the person who recruited defendant in the Communist Party] a communications worker?"

Count Two: "We should like to have you tell us now whether or not there are any persons engaged at Western Union who at any time have been known by you to be Communists."

Count Three: "Were any of the officers of your union members of the Communist Party at the time you were a member of the Communist Party?"

Count Four: "Were any of the present officers of your union members of the Communist Party at the time you were in the Party?"

When appellant declined to answer these questions,[1] referring to the statement of objections filed by Grumman, the pertinency of the questions was explained to him as follows:

"Mr. Arens [Counsel for Committee]: Mr. Chairman, I respectfully suggest that I be permitted to explain to the witness why it is pertinent to this inquiry for us to insist that this witness tell us whether or not the person who recruited him into the Communist Party was at that time in the communications field as a communications worker.

"Now, Mr. Witness, this committee is considering legislation to safeguard this Nation from possible espionage or sabotage facilities by Communists

"If the person who enlisted you into the Communist party was engaged in the communications field, that person undoubtedly would have some information which would be of use to this committee in developing facts respecting Communist penetration of the communications facilities of this country.

\* \* \* \* \* \*

"If you do have such information and if we can get the names of those people and if we can get them to testify, we will have information which will form a solid foundation upon which this committee can recommend legislation to the Congress, to protect the security of this Nation."

The pertinency of the specific questions forming Counts Three and Four of the indictment was explained to appellant by Mr. Gordon H. Scherer, a committee member, as follows:

"[T]hose questions were asked you for the same reasons that Mr. Arens, our counsel, gave you for asking the other questions. They

---

1. Appellant, like Grumman, did not urge the Fifth Amendment.

are pertinent for the same reasons that he advanced."

At the trial in the District Court, Count Two of the indictment was dismissed on motion of appellant. He was convicted on the remaining three counts and was duly sentenced. This appeal followed.

Richard Arens, the committee counsel, testified at the trial that appellant was called to testify before the committee on the following basis: (1) his name appeared on a list given the committee by Western Union Telegraph of its employees who, in their work, had access to Government coded messages; (2) the committee files listed appellant as a member of the American Communications Association [as stated in Grumman, testimony before the committee had identified certain officers of that Association as communists]; and (3) a New York Times article published in 1940 contained an account of union litigation in which it was alleged that appellant was a "Red."

We have already decided, in Grumman, that the subcommittee's investigation of the subject was authorized by Congress; that the subcommittee was pursuing a valid legislative purpose in conducting this investigation; and that the subcommittee's interrogation in the course of its investigation in the communications field did not violate First Amendment rights of free association and free speech.

We think the questions asked appellant were clearly pertinent to the subject matter under investigation. It is difficult to imagine questions more pertinent to an effort to discover the identity of persons possessing the very information the committee sought. We think, too, that the explanation of pertinency given appellant made that pertinency clear beyond any doubt. In such circumstances, appellant's refusal to answer amounted to a refusal to identify to the committee persons who might possess up-to-date knowledge of the details and extent of communist conspiracy in the industry under investigation, and a refusal, in effect, to state even whether or not such a conspiracy existed.

Appellant further complains of the exclusion by the trial court of his proffered expert testimony on the question of "balancing" the interest of the Government in eliciting the testimony sought against the First Amendment rights asserted by the witness. This "balancing" is strictly a matter of law for decision by the court and, therefore, "expert" testimony is irrelevant.

Appellant seeks to distinguish this case from Wilkinson v. United States, 1961, 365 U.S. 399, 81 S.Ct. 567, 5 L.Ed. 2d 633, and Braden v. United States, 1961, 365 U.S. 431, 81 S.Ct. 584, 5 L.Ed. 2d 653, on the ground that the committee lacked probable cause for calling him inasmuch as he was not identified by prior witnesses as a communist. Calling him in such circumstances, he contends, amounts to an "indiscriminate dragnet procedure." See Barenblatt v. United States, 1960, 360 U.S. 109, 134, 79 S.Ct. 1081, 3 L.Ed.2d 1115.

We know of no requirement that a prospective witness actually be named as a communist by a prior witness before he may legally be called by a congressional investigating committee. Certainly the committee had probable cause to inquire whether appellant was a communist. His affirmative answer to the questioning as to party membership in and of itself was sufficient to induce the committee to seek from him the information it wanted. This, we think, is what the Supreme Court meant, in Wilkinson, when it said: "Indeed, it is difficult to imagine a preliminary question more pertinent to the topics under investigation than whether petitioner was in fact a member of the Communist Party." [365 U.S. 399, 81 S.Ct. 575.]

In accordance with our action in delaying decision in Grumman, we delayed decision in this case, which, like Grumman, is readily distinguishable from Deutch v. United States, 1961, 367 U.S. 456, 81 S.Ct. 1587. As in Grumman, the questions asked of appellant here were clearly pertinent to the subject under inquiry and in no way represented an

excursion beyond the announced purpose and scope of the committee's inquiry.

We have examined the other contentions of appellant and find no error.

Affirmed.

BAZELON, Circuit Judge (concurring in the result).

Two principal grounds of error are raised on this appeal: (1) that the questions which appellant refused to answer, relating to the names of other persons associated with him in political activity, were not pertinent to the congressional inquiry; and (2) that there was no showing of probable cause sufficient to justify the issuance of a subpoena to appellant. I agree that the first contention must be rejected if we are to consider the question of pertinency to be resolved without reference to First Amendment rights. I also agree that the second contention must fail since we are bound by this court's decision in Shelton v. United States, 1960, 108 U.S.App.D.C. 153, 280 F.2d 701, certiorari granted 1961, 365 U.S. 857, 81 S.Ct. 823, 5 L.Ed.2d 821.